Approved: _Christopher J Clore_
CHRISTOPHER J. CLORE
Assistant United States Attorney



Before:   THHE HONORABLE ROBERT W. LEHRBURGER
United States Magistrate Judge
Southern District of New York

------------------------------------X
                                      : 

**19 MAG 9027**

UNITED STATES OF AMERICA       :   SEALED COMPLAINT
                                        :

                                        :   Violations of 18 U.S.C.
            -v.-              :   §§ 922(g) and 924(c)
                                          :

MIGUEL FRIAS,                 :   COUNTY OF OFFENSE:
                                          :   BRONX

                                        :
                   Defendant.       :
                                        :
------------------------------------ X

SOUTHERN DISTRICT OF NEW YORK, ss.:

     JASON FERNANDEZ, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD"), and charges as follows:

COUNT ONE

     1.   On or about September 5, 2019, in the Southern District of New York and elsewhere, MIGUEL FRIAS, the defendant, knowing that he had previously been convicted in a court of a crime punishable by a term of imprisonment exceeding one year, did knowingly and intentionally possess in and affecting commerce a firearm, to wit, a Smith & Wesson, model M&P 45, .45 caliber semi-automatic handgun, which previously had been shipped and transported in interstate and foreign commerce.

     (Title 18, United States Code, Section 922(g)(1).)

COUNT TWO

     2.   On or about September 5, 2019, in the Southern District of New York and elsewhere, MIGUEL FRIAS, the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, a

conspiracy to distribute and possess with intent to distribute mixtures and substances containing a detectable amount of crack cocaine, knowingly did use and carry a firearm, and, in furtherance of such crime, did possess a firearm, and did aid and abet the use, carrying, and possession of a firearm, which was brandished.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii), and 2.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

3.   I am a Detective with the New York City Police Department ("NYPD"), and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement officers and other individuals. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

4.   In the course of this investigation, I have reviewed a video recording (the "Video") taken from a security camera located in the vicinity of 1115 Grant Avenue, in the Bronx, New York ("1115 Grant"). Based on my review of the Video, I have learned, in sum and substance, and among other things, the following:

a.   On or about September 5, 2019, at approximately 5:13 p.m.,[1] a black sedan (the "Sedan") driving northbound on Grant Avenue towards McClellan Street stopped in front of 1115 Grant, which is on the left (west) side of Grant Avenue when travelling north.

b.   An unknown black male wearing a black t-shirt and dark pants ("UM-1") exited the Sedan from the driver's side door and opened the trunk. At the same time, a second unknown black male also wearing a black t-shirt ("UM-2") exited the Sedan from the front passenger door and walked towards the trunk.

c.   UM-1 closed the trunk seconds after he opened

---

[1]   The timestamp on the video, which is an hour behind the actual time, shows 16:13.

it without taking anything out and UM-1 and UM-2 walked towards the front passenger door of the Sedan and out of view of the camera.

        d.    At or around the same time that the Sedan initially came to a stop – and as UM-1 was opening the trunk – two males can be seen slightly behind the Sedan walking northbound on the west side of Grant Avenue. One of the males ("Individual-1") was wearing a white tank top and gray shorts and was carrying a black backpack (the "Backpack"). The other male, later identified as MIGUEL FRIAS, the defendant, was wearing a dark blue t-shirt and dark pants.

        e.    FRIAS observed UM-1 open the trunk of the Sedan and quickly walked behind Individual-1, opened the Backpack, and grabbed an object from inside. After grabbing the object, FRIAS slowly backed away from the Sedan and out of view. Individual-1 dropped the Backpack on the ground and ran out of view of the camera.

        f.    At approximately 5:14 p.m., the Sedan left the area northbound on Grant Avenue at a high rate of speed. As the Sedan drove off, FRIAS ran on the sidewalk after the Sedan holding a dark colored object that appeared to be a firearm in his right hand.

        g.    As FRIAS ran into the street behind the Sedan, he dropped what appeared to be the firearm's magazine (the "Magazine") on the sidewalk in front of 1115 Grant. FRIAS then returned to the sidewalk, picked up the Magazine, placed the firearm in the waistband of his pants, and walked towards the entrance to 1115 Grant Avenue.

        h.    Seconds later, Individual-1 returned to camera view, retrieved the Backpack from the ground and ran towards the entrance to 1115 Grant Avenue.

        5.    Based on my review of reports and records prepared by other law enforcement officers, I have learned, in substance and in part, that, on or about September 5, 2019, at approximately 5:14 p.m., police received a 911 call reporting a Hispanic male wearing a blue shirt and carrying a firearm in the vicinity of 1115 Grant.

        6.    Based on my conversations with a police officer involved in this investigation ("Officer-1"), and my review of reports and records prepared by other officers, I have learned, in substance and in part, the following:

a.      Police officers arrived in the vicinity of 1115 Grant minutes after the 911 call and began speaking with several eyewitnesses. The eyewitnesses reported generally, in substance and in part, that a man with a gun and others ran into 1115 Grant.

b.      One eyewitness ("Witness-1") explained, in substance and in part, that Witness-1 was familiar with the individuals who ran into 1115 Grant and believed that they ran into apartment 4C (the "Apartment").

c.      The officers went to the fourth floor of 1115 Grant and knocked on the door to the Apartment. A light-skinned male ("Individual-2") answered the door and gave consent for the Officers to enter. Inside, Officer-1 observed FRIAS, who was wearing clothing consistent with the clothing worn by the individual with the gun in the Video, Individual-1, and a third male ("Individual-3").

d.      Individual-2 subsequently gave consent for the officers to search the Apartment. Inside one of the bedrooms, Officer-1 observed a black .45 caliber handgun (the "Firearm") in a dresser drawer.

e.      FRIAS, Individual-1, Individual-2, and Individual-3 were placed under arrest.

7.      In the course of this investigation, I have watched a video recording of a custodial interview of MIGUEL FRIAS, the defendant, conducted by two detectives. Based on my review of the video, I have learned, in sum and substance, and among other things, the following:

a.      During the interview, MIGUEL FRIAS, the defendant, is wearing a blue shirt and black pants, consistent with the clothing worn by the man carrying the firearm in the Video.

b.      FRIAS was advised of his Miranda rights orally, orally waived those rights, and agreed to speak with the detectives.

c.      FRIAS admitted that the Firearm and the Backpack belonged to him, that he sold crack cocaine, and that he possessed the Firearm for protection as a result of a dispute with another drug dealer over who supplied FRIAS with "work."

8.      Based on my training and experience, I know that

4

"work" is street terminology for narcotics.

       9.    Based on my conversation with a Special Agent of the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives, I have learned that the Firearm was manufactured outside of the State of New York.

      10.    I have reviewed criminal history records and court transcripts pertaining to MIGUEL FRIAS, the defendant, which show that FRIAS sustained a felony conviction on or about August 16, 2018, in the Southern District of New York, of possession with intent to distribute cocaine base, in violation of Title 21, United States Code, Section 841(b)(1)(C), a felony, which is punishable by imprisonment for more than one year, and that FRIAS was advised that the maximum sentence for this offense was 20 years.

      WHEREFORE, deponent prays that MIGUEL FRIAS, the defendant, be imprisoned or bailed, as the case may be.

                                JASON FERNANDEZ
                                Detective
                                NYPD

Sworn to before me this
25th day of September, 2019

HONORABLE ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK